UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ARTHUR GUILLORY

VERSUS

LOUISIANA DEPARTMENT OF
HEALTH AND HOSPITALS, ET AL.

CIVIL ACTION

NO. 16-787-JWD-RLB

## RULING

Before the Court is a *Motion to Dismiss* ("Motion") filed by the Louisiana Department of Health ("LDH"), Hampton "Steve" Lea, Michael DeCaire, Dr. John Thompson, Dr. Monique Attuso, Dr. Sanket Vayas, Dr. Alan Perego, Dr. Patrick McCrossen, Dr. Elizabeth Cain, Dr. Gabriel Onor, Carlos Green, Katina Chaney, Lacey Betholet, Otis Drew, Sammie Dunn, Jimmie Holmes, Matthew McKey, Ronald Johnson, and Paula Bryant (collectively "Defendants").[1]  Plaintiff has filed an *Opposition* to the *Motion*.[2]  The Defendants have filed a *Reply*.[3]  The Court's jurisdiction is pursuant to 28 U.S.C. § 1331. Oral argument is unnecessary.  For the following reasons, the *Motion* shall be **GRANTED**, but Plaintiff Guillory is given 30 days to amend his complaint to cure any deficiencies.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Arthur Guillory ("Guillory") is a patient housed at the Eastern Louisiana Mental Health System's Feliciana Forensic Facility ("ELMHS") in Jackson, Louisiana. Although

---

[1] Doc. 20.  Guillory's *First Amended Complaint* (Doc. 5) was filed before an answer or other responsive pleadings were filed. A *Second Amended Complaint* (Doc. 15) was filed with leave of court. (Doc. 14) and merely corrected the identity of a Defendant. The Court will treat the *First Amended Complaint* as the operative complaint. Additionally, in his *First Amended Complaint*, Guillory also names "CGT John Doe 1" and "CGT John Doe 2" as Defendants to this action.  In their *Motion to Dismiss*, Defendants state that counsel is not making an appearance for any defendant not properly identified or served.
[2] Doc. 24.
[3] Doc. 25.

1

Guillory's status at ELMHS is not clear from the First Amended Complaint, Guillory's opposition to this motion states he is "involuntarily committed to [ELMHS] as a result of the Not Guilty by Reason of Insanity (NGRI) acquittal in a criminal case."[4] On November 24, 2015, while housed in the D-wing of the Admissions Special Security Area ("ASSA") unit at ELMHS, Guillory was granted a transfer to the less restrictive Intermediate Treatment Unit ("ITU").[5] Guillory alleges that because of a bed space shortage at ITU, he was ordered by Defendant Dr. Sanket Vayas ("Dr. Vayas") to return to ASSA the following day.[6]

On November 25, 2015, Guillory claims that he was transferred back to ASSA and, under the direction of Defendant Captain Matthew McKey ("Captain McKey"), was placed in the A-wing instead of being returned to the D-wing.[7] Guillory asserts that he had expressed a safety concern to Captain McKey regarding his placement in the A-wing, contending that it housed several of his known enemies and other patients who regarded him as a "rat" based on a belief that he previously informed on them.[8] Guillory also alleges that the A-wing was commonly regarded as a violent tier where injury was likely to occur.[9]

Guillory asserts that he was attacked by other patients housed in the A-wing—some of whom he claims had a known history of violence towards other patients—while getting ready to shower on November 26, 2015.[10] Guillory alleges that Defendants Jimmie Holmes ("CGT Holmes") and Sammie Dunn ("CGT Dunn"), who were both employed by ELMHS as Correction Guard Therapeutics ("CGT"), were assigned to the

---

[4] Doc. 24 at 6.
[5] Doc. 5, at ¶24.
[6] *Id.*
[7] *Id.* at ¶25.
[8] *Id.* at ¶26.
[9] *Id.* at ¶27.
[10] *Id.* at ¶28.

tier and tasked with monitoring the physical safety of patients under their control.[11] Guillory further alleges that CGT Dunn was specifically tasked with providing "close visual observation" on Guillory at the time of the incident.[12] Guillory contends that CGT Holmes left the unit upon witnessing the commencement of the attack, and only acted to stop the attack once he returned with backup.[13]

According to his *First Amended Complaint*, Guillory was initially examined by Defendant Carlos Green ("Nurse Green"), who was employed as a nurse by ELMHS, shortly after the incident in question.[14] Guillory alleges that he requested that Nurse Green transfer him to the hospital because he felt extreme pain on the left side of his body and had difficulty breathing. Guillory states that Nurse Green told him that there was no reason to transfer him to the hospital or to provide any additional follow up care.[15] Guillory further alleges that Nurse Green failed to include his complaints of pain or difficulty breathing on the injury report form that was completed after Nurse Green's examination.[16] Guillory contends that Defendant Michael DeCaire ("AOD DeCaire"), ELMHS' Assistant Chief Executive Officer and the Administrator on Duty at the time of the incident, was notified of the attack but did not provide any follow up care beyond Nurse Green's initial assessment.[17]

Guillory states that he was transferred out of the A-wing into an ITU dorm on November 27, 2015.[18] Guillory alleges that upon his transfer he informed Nurse Henrietta

---

[11] *Id.* at ¶¶ 4, 29.
[12] *Id.*
[13] *Id.* at ¶¶29-30.
[14] *Id.* at ¶31.
[15] *Id.* at ¶32.
[16] *Id.*
[17] *Id.* at ¶33.
[18] *Id.* at ¶34.

Johnson ("Nurse Johnson"), who is not named as a Defendant in the *First Amended Complaint*, that the left side of his body was in pain.[19]  Guillory further alleges that after being notified of his complaints of pain by Nurse Johnson, Defendant Dr. Alan Perego ("Dr. Perego") commenced a painful examination that included an auscultation and the application of pressure to his stomach and ribs.[20]  Guillory maintains that, although Dr. Perego verbally informed him that one of his lungs may not be functioning properly, he failed to document this observation and ordered only that Guillory be given prune juice to address issues related to constipation.[21]  Guillory also contends that Dr. Perego failed to take his recent attack into account when making his assessment.[22]

Guillory alleges that he continued to report feeling pain on the left side of his body and even started to observe bruising during his monthly assessment with Defendant Nurse Latshum Lacey ("Nurse Lacey") on November 28, 2015.[23]  Guillory further alleges that Nurse Lacey failed to document his reported pain, bruising, or the recent attack on the report form, instead merely indicating "no new impairments."[24]

On December 8, 2015, ten days following his monthly assessment by Nurse Lacey, Guillory alleges that Dr. Vayas, his treating psychiatrist, and Dr. John Thompson ("Dr. Thompson"), ELMHS' Chief of Staff, received laboratory reports that he contends reflected changes in his blood chemistry.[25]  Guillory asserts that neither Dr. Vayas nor Dr. Thompson took the steps necessary to identify the specific cause of the change in his

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at ¶35.
[24] *Id.*
[25] *Id.* at ¶36.

blood chemistry.[26]    Guillory further alleges that Dr. Vayas merely followed up by prescribing him sodium chloride tablets, but did not further investigate the underlying cause of the change.[27]

Ten days following his evaluation by Dr. Vayas, Guillory alleges that he informed Defendant Nurse Otis Drew ("Nurse Drew") of pain in his back and ribs and of his trouble breathing.[28]    Guillory asserts that Nurse Drew merely followed up by offering him Vicks VapoRub to address his shortness of breath and referred him to Defendant Dr. Elizabeth Cain ("Dr. Cain").[29]    Guillory contends that Dr. Cain failed to offer any substantive follow up on his complaints of shortness of breath.[30]

Guillory asserts that his reports of pain and shortness of breath were dismissed for two months following his evaluations by Nurse Drew and Dr. Cain.[31]    Guillory states that he was forced to endure significant pain in order to comply with his proscribed exercise regimen or risk dropping a therapeutic level, impacting his ability to seek release and maintain privileges.[32]    Guillory contends that he was informed that various medical personnel including Nurse Green and Nurse Drew told the CGTs that his complaints were all imagined and a function of his delusion.[33]

Guillory alleges that on January 14, 2016, his complaints of pain and shortness of breath were followed up with a prescription of Albuterol and a chest x-ray by Nurse Rosemary Stagg ("Nurse Stagg"), who is not a named Defendant in his *First Amended*

---

[26] *Id.*
[27] *Id.*
[28] *Id.* at ¶37.
[29] *Id.*
[30] *Id.*
[31] *Id.* at ¶38.
[32] *Id.*
[33] *Id.*

*Complaint.*[34]  Guillory contends that the results of his chest x-ray revealed a massive effusion around his left lung, which was so significant that his sternum and heart had been shifted to the right.[35]

Guillory asserts that he was immediately routed to the emergency room at University Medical Center ("UMC"), where a radiologist concluded that his ribs on his left side were fractured and his left lung had collapsed.[36]  Guillory claims that the physicians at UMC noted that they were particularly concerned about a potential blood clot due to the old age of the effusion and the amount of blood that was pooled around his lung.[37] Ultimately, Guillory contends that his medical issues required extensive surgery in order to drain the effusion and re-inflate his lung.[38]  This required Guillory to remain at UMC for over a month, chained to his hospital bed at all times, until he was transferred to Villa Feliciana Nursing Home to recuperate for an additional month.[39]  Guillory alleges that he was eventually returned to ELMHS on March 26, 2016, nearly four months after his initial injury.[40]

Guillory claims that the attack he endured in November 2015 was not referred to the LDH's Adult Protective Services ("APS") for investigation until February 10, 2016.[41] Guillory states that on March 9, 2016, an Investigative Review Committee ("IRC") unanimously found that allegations of caregiver neglect against CGT Dunn, CGT Holmes, and Nurse Green were substantiated after the IRC noted that CGT Dunn and CGT

---

[34] *Id.* at ¶39.
[35] *Id.*
[36] *Id.* at ¶¶39-40.
[37] *Id.*
[38] *Id.* at ¶41.
[39] *Id.* at ¶¶41-42.
[40] *Id.* at ¶42.
[41] *Id.* at ¶43.

Holmes failed to follow shower procedures and that Nurse Green had failed to complete a post fall assessment or include any follow up care notes in his report.[42]

Guillory alleges that ELMHS Chief Executive Officer, Hampton Steve Lea ("CEO Lea"), was provided with the IRC's findings against all three ELMHS personnel (CGT Dunn, CGT Holmes, and Nurse Green) but only agreed with the finding of caregiver neglect against CGT Dunn.[43] Guillory further contends that CEO Lea failed to supply any basis for his findings, which resulted in unsubstantiated findings of caregiver neglect against CGT Holmes and Nurse Green.[44]

Guillory filed the instant lawsuit on November 23, 2016 asserting claims against the Defendants arising under the United States Constitution; 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, 42 U.S.C. § 1988, and 42 U.S.C. § 12205, *et. seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"); the Louisiana Medical Malpractice Act, La. R.S. §40:1231.1, *et. seq.* ("LMMA"); and Louisiana state law.[45]

Guillory claims that the Defendants discriminated against him in violation of the Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983 by establishing and maintaining a system that they knew would result in Guillory being denied access to appropriate medical care by failing to supervise subordinates to ensure patients received appropriate medical care and by acting with deliberate indifference to Guillory's right to receive appropriate medical care. Additionally, Guillory alleges that LDH

---

[42] *Id.* at ¶44.
[43] *Id.* at ¶45.
[44] *Id.*
[45] Doc. 5 and Doc. 20. In his *Opposition* to the *Motion to Dismiss*, the Plaintiff agreed to the dismissal of the medical malpractice claims against all Defendants as well as all claims against Paula Bryant, Ronald Johnson, and Monique Attuso. (Doc. 24 at 1, 4.)

violated the ADA by discriminating against and continuing to discriminate against him on the basis of disability, and by denying him access to appropriate medication, care, and treatment that could have timely treated his medical condition and reduced the risk of serious harm from his untreated condition. Similarly, Guillory claims that LDH discriminated against him in violation of the RA on the basis of his disability by failing to make reasonable accommodations in their facilities, services, and programs. Guillory further contends that the Defendants violated the LMMA and other state law statutes by engaging in conduct that caused him injury and harm.[46]

As a result of the Defendants' alleged discriminatory treatment, Guillory asserts that he suffered physical injuries, mental and emotional pain and suffering, anguish and distress, embarrassment, humiliation, and possible medical expenses.[47] Guillory seeks to recover compensatory and punitive damages, attorney's fees, costs, and disbursements as authorized by the respective statues for Defendants' alleged discriminatory conduct and deliberate indifference.

Before the Court is a *Motion to Dismiss* filed by Defendants.[48] In the *Motion*, the Defendants argue that the Court lacks subject matter jurisdiction over Guillory's Section 1983 claims against LDH and all of his claims under Louisiana state law as they are barred by the Eleventh Amendment of the United States Constitution.[49] They also seek dismissal of Guillory's Section 1983 claims against all other remaining Defendants because Plaintiff has failed to state a claim upon which relief can be granted. Defendants further assert that they are entitled to qualified immunity against Guillory's Section 1983

---

[46] *See* footnote 45.
[47] Doc. 5, at ¶62.
[48] Doc. 20.
[49] Doc. 20, at 2.

claims. Additionally, Defendants request that the Court dismiss Guillory's claims against all Defendants under the ADA and the RA for failure to state a claim upon which relief can be granted. Finally, Defendants seek the dismissal of Guillory's claims against all Defendants under the LMMA as premature because Guillory has not presented his claims before a medical review panel.

Guillory concedes that his medical malpractice claims against all Defendants, as well as the claims against Defendants Paula Bryant, Ronald Johnson, and Monique Attuso, should be dismissed.[50] Guillory disagrees with the remainder of the Defendants' arguments made in their *Motion to Dismiss*.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[51] Pursuant to Rule 12(b)(1) a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim."[52] A court should consider a Rule 12(b)(1) attack before addressing any challenge on the merits.[53] Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice."[54] Furthermore, a Rule 12(b)(1) motion to dismiss is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. In order "to survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual

---

[50] *See* footnote 45.
[51] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).
[52] *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).
[53] *Id.*
[54] *Id.* at 286-87.

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[55]  "Facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[56]

## B.    Rule 12(b)(6)

At the motion to dismiss stage, the Court must accept the well-plead factual allegations in the complaint as true.[57]  The Court views the complaint in the light most favorable to the plaintiff, resolving all doubts in his favor.[58]  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[59]  The Court will not "strain to find inferences favorable to the plaintiff."[60]  If the facts as plead allow the Court to conclude that plaintiff's claims for relief are "plausible," the motion must be denied.[61]  To satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[62]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[63]

---

[55] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[56] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).
[57] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).
[58] *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).
[59] *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 555).
[60] *Taha v. William Marsh Rice Univ.*, No. 11-2060, 2012 WL 1576099, *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004)).
[61] *Twombly*, 550 U.S. at 570.
[62] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[63] *Id.*

### III.    ANALYSIS

#### A.    Section 1983 Claims

Under Section 1983, a claimant may bring a private cause of action against an individual who, under color of law, deprives a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws."[64]   In his *First Amended Complaint*, Guillory asserts four separate claims under 42 U.S.C. § 1983 against the Defendants in their individual capacities: (1) systemic denial of access to medical care; (2) failure to supervise; (3) deliberate indifference to patients' right to medical care; and (4) failure to protect.[65]   In their *Motion*, the Defendants contend that Guillory's Section 1983 claims against LDH should be dismissed because they are barred under the Eleventh Amendment of the United States Constitution.   Additionally, the Defendants assert that all Section 1983 claims against the remaining Defendants should be dismissed as they are entitled to qualified immunity from suit.

#### 1.    LDH's Sovereign Immunity Defense

In their *Motion*, the Defendants assert that the Eleventh Amendment of the United States Constitution grants a state, or an arm of the state, sovereign immunity from a suit arising under Section 1983.[66]   The Defendants further contend that LDH is a statutorily created arm of the state of Louisiana and therefore is entitled to immunity from Guillory's Section 1983 claims.[67]   Accordingly, the Defendants argue that the Court lacks subject matter jurisdiction over the claims pursuant to Rule 12(b)(1) and urge the Court to dismiss

---

[64] 42 U.S.C. § 1983.
[65] Although the Court does not read the Plaintiff's *First Amended Complaint* to properly allege a failure to protect claim under 42 U.S.C. § 1983, Defendants appear to concede that such a claim has been asserted by specifically addressing this claim in their *Motion to Dismiss* (*see* Doc. 20, at 2; Doc. 20-1, at 13-16).
[66] Doc. 20-1, at 7.
[67] *Id.* at 8.

### III.    ANALYSIS

#### A.    Section 1983 Claims

Under Section 1983, a claimant may bring a private cause of action against an individual who, under color of law, deprives a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws."[64]   In his *First Amended Complaint*, Guillory asserts four separate claims under 42 U.S.C. § 1983 against the Defendants in their individual capacities: (1) systemic denial of access to medical care; (2) failure to supervise; (3) deliberate indifference to patients' right to medical care; and (4) failure to protect.[65]   In their *Motion*, the Defendants contend that Guillory's Section 1983 claims against LDH should be dismissed because they are barred under the Eleventh Amendment of the United States Constitution.   Additionally, the Defendants assert that all Section 1983 claims against the remaining Defendants should be dismissed as they are entitled to qualified immunity from suit.

#### 1.    LDH's Sovereign Immunity Defense

In their *Motion*, the Defendants assert that the Eleventh Amendment of the United States Constitution grants a state, or an arm of the state, sovereign immunity from a suit arising under Section 1983.[66]   The Defendants further contend that LDH is a statutorily created arm of the state of Louisiana and therefore is entitled to immunity from Guillory's Section 1983 claims.[67]   Accordingly, the Defendants argue that the Court lacks subject matter jurisdiction over the claims pursuant to Rule 12(b)(1) and urge the Court to dismiss

---

[64] 42 U.S.C. § 1983.
[65] Although the Court does not read the Plaintiff's *First Amended Complaint* to properly allege a failure to protect claim under 42 U.S.C. § 1983, Defendants appear to concede that such a claim has been asserted by specifically addressing this claim in their *Motion to Dismiss* (*see* Doc. 20, at 2; Doc. 20-1, at 13-16).
[66] Doc. 20-1, at 7.
[67] *Id.* at 8.

Guillory's Section 1983 claims against LDH without prejudice.[68]   In his *Opposition*, Guillory does not dispute that LDH is not amenable to suit for his Section 1983 claims under the Eleventh Amendment.[69]

When evaluating a motion to dismiss based on lack of subject matter jurisdiction, "the district court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[70]   Here, the record demonstrates that Guillory does not offer any disputed facts to show that his Section 1983 claims against LDH are precluded by the Eleventh Amendment of the United States Constitution.   Therefore, the Court finds that the Defendants' *Motion* shall be granted with respect to all claims arising under 42 U.S.C. § 1983 asserted against LDH.

### 2.   Defendants' Qualified Immunity Defense

A plaintiff may bring a claim under Section 1983 against persons in their individual or official capacities, or against a governmental entity.[71]   When a person is sued in his or her individual capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."[72]   A defendant sued in his individual capacity may assert personal immunity defenses like qualified immunity, which protect government officials "acting within their discretionary authority from liability when their

---

[68] *Id.*
[69] Doc. 24, at 16.
[70] *Willoughby v. United States*, 730 F.3d 746, 749 (5th Cir. 2013) (quoting *Spotts v. United States*, 613 F.3d 559, 566-67 (5th Cir. 2012)).
[71] *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997).
[72] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known."[73]

The Fifth Circuit has held that courts should utilize a two-prong analysis when evaluating a qualified immunity defense.[74]  First, the court must determine whether the plaintiff has alleged a violation of a clearly established constitutional right.[75]  Additionally, the court must determine whether the official's conduct was objectively reasonable under clearly established law existing at the time of the incident.[76]  The determination of whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury to decide.[77]

### 3.  Proper Standard for Section 1983 Claims

The parties are in disagreement about the standard that should be applied to Guillory's Section 1983 claims.  On one hand, Guillory argues that that because he was admitted to ELMHS pursuant to a finding of Not Guilty by Reason of Insanity (NGBRI), the standard of care against which the Defendants must be measured in this action is the professional judgment standard as  articulated by the United States Supreme Court in *Youngberg v. Romeo*.[78]  In *Youngberg*, the mother of an individual who was civilly committed to a Pennsylvania state mental institution, sued institution officials alleging various violations of her son's constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution.[79]  In *Youngberg*, the Court held, "liability may be imposed only when the decision by the professional is such a substantial

---

[73] *Wallace v. Cty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).
[74] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).
[75] *Id.*
[76] *Id.*
[77] *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).
[78] *Youngberg*, 457 U.S. 307 (1982).
[79] *Id.* at 310.

departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment."[80]

Conversely, the Defendants contend that a deliberate indifference standard is warranted. In support of their contention, the Defendants assert that the Supreme Court decision in *DeShaney v. Winnebago County Department of Social Services,* casts doubt over the viability of the professional judgment standard in *Youngberg.*[81] In *DeShaney*, the Court held that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him out, but from the limitation which it has imposed on his freedom to act on his own behalf."[82] The Defendants argue that, "*DeShaney* enumerates the proper standard to apply to all individuals within the custody of the state."[83]

The confinement of an NGRI acquittee serves a purpose fundamentally different from that served by incarcerating a convicted criminal.

> The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness.[84]

Therefore, "[c]ivil commitment is not criminal commitment; unlike a criminal sentence, civil commitment is not a sentence of punishment." [85] This difference is reflected in the source of an acquittee's constitutional rights. "The Supreme Court 'repeatedly has recognized that civil commitment for any purpose constitutes a

---

[80] *Id.* at 323.
[81] *DeShaney*, 489 U.S. 189 (1989).
[82] *Id.* at 200.
[83] Doc. 25, at 3.
[84] *Jones v. United States*, 463 U.S. 354, 368 (1983), *quoted with approval in Poree v. Collins*, 866 F.3d 235, 246-47 (5th Cir. 2017).
[85] *Poree v. Collins*, 866 F.3d at 245. *See also, Jones v. United States*, 463 U.S. at 369 ("Different considerations underlie commitment of an insanity acquittee. As he was not convicted, he may not be punished." (footnote omitted)).

significant deprivation of liberty that requires due process protection.'"[86] By contrast, "[t]he constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment[87] and, with a relatively limited reach, from substantive due process."[88]

Like an insanity acquittee, a pretrial detainee has not been convicted of a crime and hence cannot be punished.[89] Thus, like the insanity acquittee, "[t]he Constitutional rights of a pretrial detainee…flow from the procedural and substantive due process guarantees of the Fourteenth Amendment."[90] But is the standard for measuring a violation of a mental incompetent involuntarily committed the same as that to be applied to the pretrial detainee?

In *Hare v. City of Corinth, Miss.*,[91] the husband of a pretrial detainee sued various jail officials and the municipality that oversaw the administration of the jail under 42 U.S.C. Section 1983 after his wife committed suicide while detained in the jail. Like here, the plaintiff in *Hare* argued that Youngberg's "substantial departure from accepted professional judgment, practice or standards" test should determine whether the plaintiff's substantive due process rights had been violated.[92] In analyzing the issue, the

---

[86] *Id.* at 246-47 (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979) (citations omitted)).

[87] *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).

[88] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 640 (5th Cir. 1996) (en banc).

[89] *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Court notes an important distinction between an NGRI acquittee on the one hand and a preretrial detainee and civil committee on the other. While none of them have been convicted of a crime, the NGRI acquittee was found to have committed a criminal act which "certainly indicates dangerousness." *Jones*, 463 U.S. 364; *see also, Lynch v. Overholser*, 369 U.S. 705, 714; *Powell v. Florida*, 579 F.2d 324, 333 (5th Cir. 1978) (insanity acquittees can be treated differently from civil committees since the "prior antisocial conduct of an insanity acquittee justifies treating such a person differently…"); *Warren v. Harvey*, 632 F.2d 925, 931 (2d Cir. 1980) (that insanity acquittees have been found beyond a reasonable doubt to have committed a criminal act indicates they have "proved themselves a danger to society at one time.").

[90] *Hare*, 74 F.3d at 639 (citing *Bell v. Wolfish, supra*).

[91] *Hare*, 74 F.3d 633 (5th Cir. 1996) (en banc).

[92] *Id.* at 646.

Court noted that *Youngberg's* call for a "distinct standard to be applied in measuring the State's constitutional duties to mental incompetents, one that differed from the *Bell* test and the deliberate indifference standard",[93] was undermined in *DeShaney's* "suggestion" that both group's enjoyed the same rights and the State should "incur the same duties to provide for the basic human needs of both groups."[94]

In determining which standard to apply, the Court in *Hare* drew a distinction between "constitutional challenges to conditions, practices, rules, or restrictions on the one hand, and episodic acts or omissions on the other."[95]. If the challenge is to a "condition of confinement", the level of scrutiny is "rationality" and the test is whether "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective."[96]. If it is related, then "it does not, without more, amount to 'punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court may permissibly infer that the purpose of the government action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.".[97]

On the other hand, when measuring whether an episodic act or omission violates due process, *Hare* "adopt[ed] a standard of deliberate indifference"[98] which, in turn is

---

[93] *Id.* at 646.
[94] *Id.* at 647.
[95] *Id.* at 644.
[96] *Id.* at 640 (quoting *Bell v Wolfish*, 441 US at 539).
[97] *Id. Youngberg* itself used the same test, balancing the individual's liberty interests against the legitimate interests of the state. *Id.*, 457 U.S. at 324. *Cf. George v. La. Dep't of Pub. Safety and Corr.*, 272 F. Supp. 3d 855 (M.D. La. 2017) (applying *Youngberg* to a constitutional challenge to the State's alleged policy, practice and procedure of arresting and incarcerating NGRI acquittees for violating their conditions of release when no crime had been committed).
[98] *Id.*

"measured by a standard of *subjective* deliberate indifference."[99].Specifically, the *Hare* court held:

> "[T]he episodic acts or omission of a state jail officer does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs.[100]

While *Hare* stated that *DeShaney* "cast doubt on the vitality of *Youngberg*,"[101] it acknowledged that "[t]he Court in *DeShaney* did not address whether involuntarily confined mental incompetents and convicted inmates shared the same constitutional rights to medical care and safety."[102] It noted that *Youngberg* did not deal with pretrial detainees, "so their respective standards are not dispositive of this suit by Mr. Hare."[103] The Court specifically "decline[d] to resolve the tension" between *Youngberg* and *DeShaney*.[104]

Since *DeShaney*, Courts have struggled with the question of when and under what circumstances to apply the *Youngberg* professional judgment test.[105] This Court has been unable to find a case within this Circuit applying the deliberate indifference standard to the episodic act or omission claim of an NGRI acquittee (and Defendants have not pointed the Court to one). Nevertheless, without more specific direction from the Supreme Court, the Court is required to follow *Hare's* guidance and thus applies the

---

[99] *Id.* (emphasis added).
[100] *Id.* at 647-48.
[101] *Id.*
[102] *Id.*
[103] *Id.*
[104] *Id.*
[105] Rosalie Berger Levinson, *Wherefore Art Thou* Romeo: *Revitalizing* Youngberg's *Protection of Liberty for the Civilly Committed*, 54 B.L.C. Rev. 535 (2013).

deliberate indifference standard to measure the alleged episodic acts and omissions in this case.

The Court also notes that, while not raised by Guillory, the deliberate indifference standard remains a subjective one as set out in *Hare* despite the intervening case of *Kingsley v. Hendrickson*.[106] *Kingsley* held that, in excessive force claims brought under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."[107] In *Alderson v. Concordia Parish Correctional Facility*,[108] the Fifth Circuit relied upon *Hare* and applied the subjective standard. Despite a concurring judge's call for the Court to "revisit the deliberate indifference standard" in light of *Kingsley*,[109] the Court rejected that argument.[110]

Here, Guillory's second through fourth claims (failure to supervise, inadequate medical care, and failure to protect) allege episodic acts or omissions. Each claim alleges specific acts by individual Defendants, each of which resulted in harm. Guillory fails to allege any facts that indicate that his harm resulted from an explicit policy or restriction imposed upon him as a condition of confinement. At best, Guillory attempts to demonstrate an unstated or *de facto* policy or restriction; however, he fails to allege any facts that establish an extended or pervasive pattern of misconduct required to prove an intended condition or practice.[111] Accordingly, the Court finds that the deliberate

---

[106] *Kingsley*, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015).
[107] *Id.*, 135 S. Ct. at 2473.
[108] *Alderson*, 848 F.3d 415 (5th Cir. 2017) (per curium).
[109] *Id.* at 425 (Graves, J., concurring).
[110] *Id.* at 419 n. 4 ("Because the Fifth Circuit has continued to rely on *Hare* and to apply a subjective standard post-*Kingsley*, this panel is bound by our rule of orderliness. (citation omitted)").
[111] *See Shepherd v. Dall. Cty.*, 591 F.3d 445, 452 (5th Cir. 2009). The *Shepherd* court explained that a condition may reflect an "unstated or *de facto* policy," as evidenced by a pattern of acts or omissions "'"

indifference standard of care is the appropriate measure of the constitutional duty owed by state officials with regard to Guillory's second through fourth claims.

### a. Systemic Denial of Access to Medical Care Claim

Guillory's first Section 1983 claim alleges that the Defendants acted individually and together to establish and maintain a system they knew would result in the effective denial of care to patients with serious medical conditions.[112]  This claim amounts to a challenge on his conditions of confinement because his allegations are not based on the specific acts or omissions of individuals, but rather on a systemic failure affecting all patients.[113]

In *Hare*, the Fifth Circuit held that a different standard applied to conditions of confinement challenges because "a State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction."[114]  The *Hare* court held that, when considering a condition of confinement, the reasonable-relationship test outlined in the Supreme Court case of *Bell v. Wolfish*,[115] was preferable to the deliberate indifference standard used when analyzing a claim based on an official's episodic acts or omissions.[116]  The Fifth Circuit explained, "[f]or the *Bell* test to apply, a jailer's acts or omissions must implement a rule or restriction or otherwise demonstrate the existence of an identifiable intended condition or practice."[117]

---

sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.' " *Id.* (quoting *Hare*, 74 F.3d at 645).
[112] Doc. 5, at ¶53.
[113] *Id.*
[114] *Hare*, 74 F.3d at 644.
[115] *Bell*, 441 U.S. 520, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979).
[116] *Hare*, 74 F.3d at 644.
[117] *Id.* at 645.

After reviewing his complaints, the Court finds that Guillory has failed to allege or identify any specific policy, practice, or custom that was the "moving force" behind the events of which he complains of. Guillory has not identified any written or informal policies that reflect the existence of unconstitutional patterns or practices. Guillory alleges no facts to suggest that any other inmate suffered as a result of a systemic failure to provide medical care. Guillory's conclusory allegations are based solely on the events in the aftermath of his attack.[118]

The Court finds that Guillory's allegations of systemic denial of access to medical care are not sufficient to reflect the sort of systemic deficiencies which the courts have found to warrant relief in other cases. Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 Systemic Denial of Access to Medical Care claim asserted against the Defendants. However, Guillory will be given leave to amend to allege, if he can, facts sufficient to support this allegation.

### b. Failure to Protect Claims

Guillory asserts 42 U.S.C. § 1983 claims against Captain McKey, CGT Dunn, and CGT Holmes in their individual capacities, alleging that they knew of his security concern and failed to keep him safe from harm. The Defendants contend that Guillory's allegations amount to nothing more than mere negligence, which is insufficient to satisfy a claim for liability under Section 1983.

---

[118] See *Moses v. Gautreaux*, No. 15-464, 2015 WL 8104069, *5-6 (M.D. La. Nov. 6, 2015) (granting a motion to dismiss in favor of the City/Parish of East Baton Rouge and finding conclusory the plaintiff's allegations regarding a deficient policy, practice, or custom that resulted in inadequate medical care at ERBPP); *Jackson v. E. Baton Rouge Par. Prison*, No. 14-45, 2015 WL 411211, *3-4 (M.D. La. Jan. 29, 2015) (same, involving alleged delays in the provision of dental care at EBRPP).

Claims under Section 1983 for failure to protect require the plaintiff to demonstrate that he was placed "under conditions posing a substantial risk of serious harm, and that prison officials were deliberately indifferent to his need for protection."[119]  Additionally, a plaintiff must also prove "that the official actually knew of a substantial risk of serious harm and failed to act."[120]  The Fifth Circuit has stated that mere negligence on the part of the official is not sufficient to support a finding of liability under Section 1983.[121]  "A prison official acts with deliberate indifference 'only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it.'"[122]

The Court will now analyze the failure to protect claims made against Defendants McKey, Dunn, and Holmes.

### i. Captain McKey

Guillory alleges that Captain McKey was responsible for security and short term housing assignments of patients at ELMHS.[123]  Guillory further claims that he was placed in the A-wing at the direction of Captain McKey, despite explaining to Captain McKey that patients in that wing regarded him as a "rat" and that he feared for his safety if placed there.[124]  Guillory contends that Captain McKey failed to appropriately respond to his safety concerns by ignoring them and placing him in that wing over his objections.[125]

Though a close call, the Court finds that Guillory has failed establish that Captain McKey acted with deliberate indifference, as required under 42 U.S.C. § 1983.  Although

---

[119] *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 2001).
[120] *Adeleke v. Heaton*, 352 F. App'x 904, 907 (5th Cir. 2009) (per curiam) (unpublished).
[121] *Hare*, 74 F.3d at 645-46.
[122] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847, 114 S.Ct. 1970).
[123] Doc. 5, at ¶18; Doc. 24, at 2
[124] Doc. 5, at ¶26, Doc. 24, at 2.
[125] *Id.*

Guillory claims that he informed Captain McKey that he was concerned for his safety, he never alleges that Captain McKey was aware of any specific safety concerns or anything beyond Guillory's general perception of the A-wing. In fact, Guillory specifically refers to two individuals by name in his *First Amended Complaint*, both of whom he contends had a history of being violent towards other patients; yet he fails to allege any facts that would indicate that he informed Captain McKey of any specific threats against his safety.[126] Furthermore, Guillory alleges that CGT Dunn was "specifically assigned to maintain close visual observation on Mr. Guillory" at the time of the attack.[127] Although it is not clear that Captain McKey was responsible for tasking CGT Dunn with monitoring Guillory's safety, the mere fact that such an assignment was made demonstrates that some measures were taken to abate Guillory's safety concerns.

Since the Court finds that Guillory has failed to allege that Captain McKey acted with deliberate indifference, Guillory has not alleged the requisite level of liability under Section 1983. Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 claim of failure to protect asserted against Captain McKey. The dismissal shall be without prejudice, and Guillory will be given an opportunity to amend.

### ii. CGT Dunn

Guillory alleges that CGT Dunn was employed by ELMHS and was responsible for security and escorting of patients throughout the facility.[128] Guillory further alleges that at the time of the attack, CGT Dunn was assigned to the A-wing and tasked with

---

[126] Doc. 5, at ¶28.
[127] Doc. 5, at ¶29.
[128] Doc. 5, at ¶23.

monitoring patients to ensure that any tensions did not rise to the level of physical violence.[129]  Guillory also alleges that CGT Dunn was specifically assigned with maintaining close visual observation of him to ensure his safety.[130]  Guillory claims that the attack occurred because CGT Dunn (along with CGT Holmes) left their posts on the A-wing, rendering it virtually unsupervised.[131]

The Court finds that Guillory has failed to adequately allege that CGT Dunn acted with deliberate indifference, as required under 42 U.S.C. § 1983.  Guillory only alleges that CGT Dunn left his post after being assigned to ensure his safety.  Guillory does not allege any facts that would indicate that CGT Dunn perceived that Guillory's safety was at risk at the time of the attack, other than his conclusory assertion that the attack occurred because CGTs Dunn and Holmes lefts their posts on the Wing."[132] As the Fifth Circuit clarified, "[a] state actor's failure to alleviate 'a significant risk that he should have perceived but did not, 'while 'no cause for commendation,' does not rise to the level of deliberate indifference."[133]  Although Guillory's allegations against CGT Dunn may amount to negligence, they do not meet the standard of deliberate indifference.[134]

Since the Court finds that Guillory has failed to allege that CGT Dunn acted with deliberate indifference, Guillory has failed to demonstrate the requisite level of liability for this type of claim under Section 1983.  Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 failure to protect claim asserted against CGT Dunn. Leave to amend will be granted.

---

[129] Doc. 5, at ¶29.
[130] *Id.*
[131] Doc. 24, at 2.
[132] *Id.*
[133] *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).
[134] The Court makes no finding that CGT Dunn was negligent.

### iii.  CGT Holmes

Guillory alleges that CGT Holmes was employed by ELMHS and, like CGT Dunn, was tasked with security and escorting patients around the facility.[135]  Guillory further alleges that at the time of the attack, CGT Holmes was assigned to the A-wing to monitor patients to ensure that any tensions did not rise to the level of physical violence.[136]  Guillory maintains that he requested soap and shampoo from CGT Holmes as he was preparing to shower shortly before the attack.[137]  Guillory further alleges that CGT Holmes witnessed the beginning of the attack and chose to leave the unit, rather than intervene to stop it.[138]  Guillory does acknowledge that CGT Holmes returned to the unit with back up to stop the attack, although it is unclear precisely how long it took for CGT Holmes to intervene.[139]

The Court finds that Guillory has failed to adequately allege that CGT Holmes acted with deliberate indifference, as required under 42 U.S.C. § 1983.  Although Guillory alleges that CGT Holmes left the unit after witnessing the commencement of the attack, he does not allege any facts that would indicate that CGT Holmes's action was done with deliberate indifference to his safety.  In fact, Guillory has alleged facts acknowledging that CGT Holmes returned to the unit with backup, suggesting that CGT Holmes was attempting to abate the threat to Guillory's safety.  Guillory alleges no facts that would indicate that CGT Holmes was absent for an unreasonably lengthy period of time, or that his decision to leave the unit was made with any consideration other than getting backup

---

[135] Doc. 5, at ¶22.
[136] Doc. 5, at ¶29.
[137] *Id.*
[138] *Id.*
[139] Doc. 5, at ¶30.

to assist with safely intervening in the attack. Although the exact number of attackers is unclear from Guillory's allegations, he does allege that his attack involved "several other patients," which might explain why CGT Holmes failed to intervene without backup.

Since the Court finds that Guillory has failed to sufficiently allege that CGT Holmes acted with deliberate indifference, Guillory has failed to demonstrate the requisite level of liability for this type of claim under Section 1983. Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 claim of failure to protect asserted against CGT Holmes.

### c. Medical Deliberate Indifference Claims

Guillory asserts 42 U.S.C. § 1983 claims for deliberate indifference to his right to medical care against the following Defendants in their individual capacities: Nurse Green, Katina Chaney ("Nurse Chaney"), Nurse Drew, Nurse Betholet, Dr. Perego, Dr. Patrick McCrossen ("Dr. McCrossen), Dr. Onor, Dr. Cain, Dr. Vayas, and Dr. Thompson.[140] The Defendants assert that Guillory fails to establish that the Defendants acted with deliberate indifference, and therefore fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983.[141] The Defendants also assert that each is entitled to qualified immunity.

Claims under Section 1983 for deliberate indifference to medical care require the plaintiff to allege acts or omissions sufficiently harmful to demonstrate deliberate indifference to a serious medical need. In order to successfully pursue a claim of deliberate indifference, a plaintiff must establish the defendant "(1) 'knows that inmates face a substantial risk of serious bodily harm;' and (2) 'disregards that risk by failing to

---

[140] Doc. 5, ¶53; Doc. 24, at 10.
[141] Doc. 20-1, at 16.

take reasonable measures to abate it.' "[142] " '[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' "[143] The Fifth Circuit has concisely summarized Plaintiff's burden on these claims as follows:

> We have described the deliberate indifference standard as an extremely high standard to meet and as requiring evidence of egregious intentional conduct. We have also delineated a laundry list of acts and omissions that are insufficient to establish deliberate indifference: unsuccessful medical treatment; acts of negligence or malpractice; a misdiagnosis; a prisoner's disagreement with his medical treatment, absent exceptional circumstances; and the decision whether to provide additional treatment, which we have described as a classic example of a matter for medical judgment. Rather, deliberate indifference requires that a plaintiff submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.[144]

The Court will now analyze Guillory's deliberate indifference claims against the above listed Defendants.

### i. Nurse Green

Guillory alleges that he was seen by Nurse Green shortly after the attack.[145] Guillory further claims that Nurse Green denied his request to be transported to the hospital, indicating that there was no reason for such a transfer or for any additional follow up care.[146] Guillory claims that Nurse Green failed to include his complaints of significant pain and difficulty breathing on the injury report that he completed shortly after his initial

---

[142] *Zaunbrecher v. Gaudin*, 641 F. App'x. 340, 344 (5th Cir 2016) (per curiam) (unpublished), *cert denied*, 137 S. Ct. 58, 196 L. Ed. 2d 31 (2016) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847, 114 S. Ct. 1970)).
[143] *Id.* (quoting *Farmer*, 511 U.S. at 837, 114 S. Ct. 1970).
[144] *Id.* at 344–45 (citations and quotations omitted).
[145] Doc. 5, ¶31.
[146] *Id.*

assessment, and that Nurse Green failed to have the report reviewed or signed by a physician.[147]

The Court finds that the allegations against Nurse Green fail to state a claim for deliberate indifference. Guillory alleges no facts to indicate that Nurse Green actually drew an inference of substantial serious risk of harm and then denied Guillory's request for a transfer to the hospital in the face of that risk. Furthermore, Guillory's claim that Nurse Green failed to provide any additional follow up care is unsubstantiated and seemingly controverted by his allegation that AOD DeCaire, the Administrator on Duty, was notified of the attack and that Guillory was examined by Nurse Henrietta Johnson one day after Nurse Green's initial assessment. As alleged, Guillory's claim of medical indifference against Nurse Green fails to adequately allege that Nurse Green acted in a way that demonstrates the requisite deliberate indifference. Guillory's claims, while possibly indicative of negligence, do not give rise to a deliberate indifference claim under Section 1983.[148]

Since the Court finds that Guillory has failed to sufficiently plead that Nurse Green acted with deliberate indifference, Guillory's claim against him under Section 1983 fails to state a claim upon which relief could be granted. Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 claim of deliberate indifference asserted against Nurse Green. However, Guillory will be allowed to amend to allege sufficient facts, if he can, to adequately allege deliberate indifference.

---

[147] *Id.* at ¶32.
[148] The Court makes no finding that Nurse Green was negligent.

### ii. Nurse Chaney

Guillory alleges Nurse Chaney was among a team of medical personnel that was responsible for his care and treatment during the two month time period following his attack.[149] Without providing any specific detail, Guillory alleges only that Nurse Chaney failed to take "any appropriate follow up action to identify the causes of his lingering left side pain and shortness of breath."[150] In his *Opposition*, Guillory contends that Nurse Chaney was one of four nurses that "failed to adequately document his injuries and seek treatment for his complaints."[151]

The Court finds that the allegations against Nurse Chaney fail to state a claim for deliberate indifference. Guillory has not alleged any facts that Nurse Chaney acted or failed to act so as to create an inference of her subjective awareness of a substantial serious risk of harm when she denied Guillory's request for more substantive medical treatment. Additionally, Guillory's claim that Nurse Chaney failed to adequately document his injuries and seek proper treatment may implicate negligence but does not give rise to a deliberate indifference claim under Section 1983.[152]

Since the Court finds that Guillory has failed to allege that Nurse Chaney acted with deliberate indifference, Guillory's claim against him under Section 1983 fails to state a claim upon which relief could be granted. Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 claim of deliberate indifference asserted against Nurse Chaney. Leave to amend will be granted.

---

[149] Doc. 5, ¶37.
[150] *Id.*
[151] Doc. 24, at 11-12.
[152] The Court makes no finding that Nurse Chaney was negligent.

### iii. Nurse Drew

Guillory's only allegation against Nurse Drew is that he offered to provide him with Vicks VapoRub after Guillory reported pain in his back and ribs and difficulty breathing over two months after the attack.[153]  Guillory concedes that Nurse Drew referred Guillory to Dr. Cain, but claims that Dr. Cain failed to follow up on his complaint of shortness of breath.  Guillory also contends that he was told that Nurse Drew, along with Nurse Green and other unidentified medical personnel, had cautioned the CGTs that his complaints were all imagined, and a function of his delusions.[154]

The Court finds that the allegations against Nurse Drew fail to state a claim for deliberate indifference.  Guillory alleges no facts to indicate that Nurse Drew actually drew an inference that Guillory faced a substantial risk of serious harm when he denied him more substantive medical treatment.  While Guillory's claim may amount to negligence, it does not give rise to a deliberate indifference claim under Section 1983.[155]

Since the Court finds that Guillory has failed to establish that Nurse Drew acted with deliberate indifference, Guillory's claim against him under Section 1983 fails to state a claim upon which relief could be granted.  Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 claim of deliberate indifference asserted against Nurse Drew. However, Guillory will be allowed an opportunity to allege sufficient facts, if he can.

---

[153] Doc. 5, ¶38.
[154] *Id.*
[155] The Court makes no finding that Nurse Drew was negligent.

### iv. Nurse Betholet[156]

Guillory contends that on November 28, 2015, while conducting Guillory's monthly physical assessment, Nurse Betholet failed to identify evidence of recent injuries and bruising on the assessment report, instead indicating that "no new impairments" were identified.[157]  Guillory further alleges that Nurse Betholet failed to note that he was the victim of a recent physical attack.[158]

The Court finds that the allegations against Nurse Betholet fail to state a claim for deliberate indifference.  Guillory alleges no facts to indicate that Nurse Betholet drew an inference of a substantial risk of serious harm when he denied Guillory more substantive medical treatment.  While his claim may suggest negligence, Guillory fails to demonstrate that Nurse Betholet acted in a way gives rise a claim of deliberate indifference.[159]

Since the Court finds that Guillory has failed to establish that Nurse Betholet acted with deliberate indifference, Guillory's claim under Section 1983 fails to state a claim upon which relief could be granted.  Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 claim of deliberate indifference asserted against Nurse Betholet. Leave to amend will be granted.

### v. Dr. Perego

Guillory alleges that he was examined by Dr. Perego at the request of Nurse Henrietta Johnson, after she noted bruising on his body two days after the attack.[160]

---

[156] In the *Amended Complaint* (Doc. 5, at ¶35), Guillory refers to "Nurse Latshum Lacey," while in the *Motion to Dismiss* (Doc. 20-1, at 18), the Defendants refer to "Nurse Lacey Betholet."  The Court treats both of these references as being directed to the same party, "Nurse Betholet", since the same factual allegations are attributed to both of these references, and neither party has alleged that this individual has been incorrectly named in the pleadings.

[157] Doc. 5, at ¶35.

[158] *Id.*

[159] The Court makes no finding that Nurse Betholet was negligent.

[160] *Id.* ¶34.

Guillory contends that he informed Dr. Perego that the examination was painful, especially when Dr. Perego applied pressure to his stomach and ribs.[161]  Guillory maintains that after listening to his breathing, Dr. Perego commented that it sounded as if one lung may not be filling completely.[162]  Despite this comment, Guillory alleges that Dr. Perego only diagnosed him with constipation and ordered that he be given prune juice as treatment.[163]  Guillory further alleges that Dr. Perego failed to document the examination, including his observation about Guillory's breathing, and also failed to take his recent attack into account.[164]  Finally, Guillory includes Dr. Perego as part of a team of medical personnel charged with monitoring his health over a two-month period that failed to take appropriate steps to identify the root cause of his pain and shortness of breath.[165]

While a close call, the Court finds that Guillory's allegations against Dr. Perego fail to state a claim for deliberate indifference.  Although Guillory alleges facts that indicate that Dr. Perego may have drawn an inference of risk of harm through his comment about Guillory's lung, Guillory has alleged no facts to indicate that the risk of harm was substantial. Guillory's allegation that Dr. Perego failed to document the evaluation and his observation—and even failing to take his recent attack into account—fails to show that Dr. Perego acted in a way that shows the requisite indifference to save the claim. While Guillory's claim may amount to negligence, it does not give rise to a deliberate indifference claim under Section 1983.

---

[161] *Id.*
[162] *Id.*
[163] *Id.*
[164] *Id.*
[165] *Id.* ¶37.

Since the Court finds that Guillory has failed to establish that Dr. Perego acted with deliberate indifference, Guillory's claim under Section 1983 fails to state a claim upon which relief could be granted. Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 claim of deliberate indifference asserted against Dr. Perego. However, Guillory will be given leave to amend.

### vi. Medical Personnel Team

Guillory's sole allegation against Dr. McCrossen and Dr. Onor is that they were both part of a team of medical personnel that was charged with monitoring Guillory's health over a two-month period, and that they both failed to take appropriate steps to identify the root cause of Guillory's pain and shortness of breath.[166] Guillory does not identify any facts that would indicate specific actions or omissions by either Dr. McCrossen or Dr. Onor as part of Guillory's medical treatment.

The Court finds that Guillory's allegations against Dr. McCrossen and Dr. Onor fail to state a claim for deliberate indifference. Guillory alleges no facts to indicate that either doctor drew an inference of a substantial risk of serious harm. In fact, it is unclear whether either doctor even personally treated Guillory, as there are no alleged facts indicating such action. Guillory fails to successfully assert a claim of deliberate indifference against these doctors and accordingly, the Court grants Defendants' *Motion* with respect to the Section 1983 claim of deliberate indifference asserted against both Dr. McCrossen and Dr. Onor. Plaintiff will be allowed to amend as to this claim.

---

[166] *Id.*

### vii.  Dr. Cain

Guillory alleges that, as Medical Director of ASSA at ELMHS, Dr. Cain was responsible for the hiring, training, supervision, discipline, and control of the doctors, nurses, and CGTs under her command.[167]  Guillory also alleges that, as his treating physician, Dr. Cain failed to offer any substantive follow up on his complaints of shortness of breath after he was specifically referred to her by Nurse Drew.[168]  Guillory does not identify any additional facts against Dr. Cain in support of his deliberate indifference claim.

The Court finds that Guillory's allegations against Dr. Cain fail to state a claim for deliberate indifference.  Guillory alleges no facts to indicate that Dr. Cain should have drawn an inference of substantial serious risk of harm at the time she allegedly failed to follow up on Guillory's complaints of shortness of breath. While Guillory's claim may demonstrate negligence, it does not give rise to a deliberate indifference claim under Section 1983, and Defendants' motion is granted as it pertains to Dr. Cain. However, Guillory will be allowed to amend.

### viii.  Dr. Vayas

Guillory asserts a claim against Dr. Vayas, who he describes as his treating psychiatrist responsible for providing mental health care and for making housing assignments.[169]  Guillory alleges that Dr. Vayas gave the order for his return to ASSA without assigning a specific unit due to a bed shortage at ITU.[170]  Guillory further alleges that Dr. Vayas was aware of Guillory's laboratory results indicating changes in his blood

---

[167] *Id.* at ¶8.
[168] *Id.* at ¶37.
[169] *Id.* at ¶9.
[170] *Id.* at ¶24.

chemistry, yet he took no steps to identify the specific reasons for this change.[171]  Instead, Guillory maintains, Dr. Vayas only ordered a treatment of the symptoms by prescribing sodium chloride tablets.[172]  Guillory does not identify any additional facts against Dr. Vayas in support of his of deliberate indifference claim.

Though a close call, the Court finds that Guillory's allegations against Dr. Vayas fail to state a claim for deliberate indifference.  Guillory alleges no facts to indicate that Dr. Vayas had sufficient information from which an inference of substantial serious risk of harm could be drawn.   In fact, Guillory admits that the transfer to ASSA was due to the bed shortage at ITU, which weighs against any claim that Dr. Vayas transferred Guillory to ASSA in deliberate indifference.   Although Guillory's allegation that Dr. Vayas erred in opting to treat the symptom of his change in blood chemistry may demonstrate suggest, it does not give rise to a deliberate indifference claim under Section 1983.  Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 claim of deliberate indifference asserted against Dr. Vayas. Guillory will be given leave to amend.

### ix.  Dr. Thompson

Guillory alleges that, as Chief of Staff of ELMHS, Dr. Thompson was responsible for the hiring, training, supervision, discipline, and control of the doctors, nurses, and CGTs under his command.[173]  Like his allegation against Dr. Vayas, Guillory maintains that Dr. Thompson was aware of Guillory's laboratory results indicating changes in his blood chemistry, yet he took no steps to identify the specific reasons for this change.[174]

---

[171] *Id.* at ¶36
[172] *Id.*
[173] *Id.* at ¶6.
[174] *Id.* at ¶36.

Guillory does not identify any additional facts against Dr. Thompson in support of his deliberate indifference claim.

For reasons identical to those expressed above, the Court finds that Guillory's allegations against Dr. Thompson fail to state a claim for deliberate indifference. In fact, it is unclear whether Dr. Thompson even personally treated Guillory, as Guillory has only alleged that Dr. Thompson may have been aware of his laboratory results. Guillory fails to demonstrate that Dr. Thompson was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that Dr. Thompson actually drew the inference. Furthermore, while Guillory's claim may be indicative negligence, it does not give rise to a deliberate indifference claim under Section 1983. Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 claim of deliberate indifference asserted against Dr. Thompson but with leave to amend granted.

### d. Failure to Supervise Claim

Guillory asserts a claim under 42 U.S.C. § 1983 against AOD DeCaire and CEO Lea in their individual capacities, alleging that they failed to supervise their subordinates to ensure that patients' medical treatment needs were being met. The Defendants contend that supervisory officials cannot be held liable for the acts or omissions of their subordinates under Section 1983. Additionally, the Defendants maintain that they are entitled to qualified immunity for their actions and that the allegations made by Guillory show mere negligence, which is insufficient to overcome a defense of qualified immunity.

Claims under Section 1983 for failure to supervise require a claimant to demonstrate the following: "(1) the supervisor either failed to supervise or train the

subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[175]  Courts have held that deliberate indifference can only be established if the official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and the official actually draws the inference.[176]  In order to establish deliberate indifference, a plaintiff must ordinarily "demonstrate a pattern of violations and that the inadequacy of the [supervision] is obviously likely to result in a constitutional violation."[177]  If a plaintiff is unable to establish deliberate indifference, the court is not required to address the other two prongs of supervisor liability.

The Court will now analyze Guillory's failure to supervise claims against both Defendants AOD DeCaire and CEO Lea.

### i. AOD DeCaire

Guillory has alleged that as Assistant CEO of ELMHS, AOD DeCaire was responsible for the hiring, training, supervision, discipline, and control of the doctors, nurses, and CGTs under his command.[178]  Guillory further alleges AOD DeCaire was notified of the attack on the same day that it occurred, but failed to order appropriate follow up care beyond the allegedly flawed initial nursing assessment by Nurse Green.[179]  Guillory claims that AOD DeCaire violated his constitutional right to have appropriately supervised and trained caretakers by failing to ensure a review of Nurse Green's initial

---

[175] *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998).
[176] *Id.* at 912.
[177] *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003).
[178] Doc. 5, at ¶5.
[179] *Id.* at ¶33; Doc 24, at 14.

assessment of Guillory's injuries by a physician; failing to ensure correct documentation and proper follow up treatment of the injury; and failing to order an investigation into the cause of the attack.[180]  Guillory contends that these violations were especially egregious because AOD DeCaire knew or should have known that the A-wing had a reputation for violence.[181]

The Court finds that Guillory has failed to establish the deliberate indifference component of supervisor liability under 42 U.S.C. § 1983.  Guillory's assertion that AOD DeCaire knew or should have known about the A-wing's reputation for violence is conclusory; he does not allege any specific facts to support this conclusory allegation.

Since the Court finds that Guillory failed to establish that AOD DeCaire acted with deliberate indifference, it need not address the other two prongs of supervisor liability. Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 claim of failure to supervise asserted against AOD DeCaire. Guillory will be given leave to amend.

### ii. CEO Lea

Guillory has alleged that as CEO of ELMHS, CEO Lea was responsible for the hiring, training, supervision, discipline, and control of the doctors, nurses, and CGTs.[182] Guillory further alleges that CEO Lea was the final policy maker at all times in the operation of ELMHS.[183]  Although Guillory does not allege that CEO Lea knew of the attack at the time it occurred, he contends that CEO Lea should have known about it and

---

[180] Doc. 24, at 14.
[181] *Id.*
[182] Doc. 5, at 3.
[183] *Id.*

should have ordered an investigation to determine how it occurred.[184]  Guillory asserts that CEO Lea's failure to investigate the attack and his injuries resulting from the attack, in addition to the delay in diagnosing and treating Guillory's injuries, demonstrates a pattern of tacit approval that violated his right to appropriately supervised and trained caretakers.[185]  Guillory cites to CEO Lea's objection to the findings of caregiver neglect by the IRC with respect to CGT Holmes and Nurse Green as further support for his liability under this claim.

The Court finds that Guillory's allegations against CEO Lea do not state a claim upon which relief can be granted under Section 1983.  Guillory's allegation that CEO Lea should have known about the attack sooner sounds in negligence, which is not a proper basis for a claim under Section 1983.  Furthermore, Guillory has failed to allege that CEO Lea acted with deliberate indifference as required to establish a claim of failure to supervise.

Since the Court finds that Guillory's allegations sound only in negligence and he failed to establish that CEO Lea acted with deliberate indifference, it need to address the remaining prongs of supervisor liability.  Accordingly, the Court finds that the Defendants' *Motion* shall be granted with respect to the Section 1983 claim of failure to supervise asserted against CEO Lea. Guillory will be given leave to amend.

**B.      ADA and RA Claims**

In addition to his claims under 42 U.S.C. § 1983, Guillory asserts claims against LHD under Title II of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("RA").  The Court's analysis of Guillory's ADA claim will

---

[184] Doc. 24, at 15.
[185] *Id.*

also apply to his RA claim since the parties are in agreement that claims under the ADA and RA are analyzed in the same way.[186]

Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."[187]   A plaintiff must first establish a prima facie case of discrimination before relief under the ADA can be considered.  To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and, (3) that such exclusion, denial of benefits, or discrimination is because of his disability.[188]   A plaintiff asserting a private cause of action for violations under the ADA may only recover compensatory damages upon a showing of intentional discrimination.[189]   Punitive damages are unavailable.[190]

Although Guillory asserts that he seeks damages pursuant to the ADA, he fails to allege any facts to support an ADA claim.  Even assuming, without deciding, that Guillory is disabled for purposes of the ADA, he has not alleged any facts suggesting that LDH

---

[186] "Accordingly, 'the rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the Rehabilitation Act.'" Doc. 20-1, at 26 (citing *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (citing *Pace v. Bogalusa City School Bd.*, 403 F.3d 272, 287-88 (5th Cir. 2005)); "The *Cooper* Court goes on to find that, 'the rights and remedies invoked in this case under Title II of the ADA and Section 504 of the RA are virtually identical.'" Doc 24, at 16 (citing *Cooper v. Kliebert*, No. 14-507, 2014 WL 7334911, at 4 (M.D. La. Dec. 19, 2014) (citing *Pace v. Bogalusa City School Bd.*, 403 F.2d 272 (5th Cir. 2005) (en banc)).
[187] 42 U.S.C. § 12132.
[188] *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).
[189] *Delano-Pyle v. Victoria County, TX*, 302 F.3d 567, 575 (5th Cir. 2002).
[190] *Barnes v. Gorman*, 536 U.S. 181, 189-90, 122 S.Ct. 2097, 2102-03 (2002).

had the subjective intent to discriminate against him because of his disability. Accordingly, the Court finds no basis for concluding that LDH had the subjective intent to discriminate against the plaintiff because of his disability. For this reason, the Defendant's *Motion* shall be granted, and Guillory's claims asserted under the ADA and the RA shall be dismissed. However, Guillory will be given permission to amend and allege facts, if he can do so, giving rise to liability under the ADA/RA.

### C.      State Law Negligence Claims

In his *First Amended Complaint*, Guillory alleges medical malpractice and negligence claims against the Defendants.[191] The Court will examine only the negligence claims asserted against the individual Defendants, as Guillory has agreed to the dismissal of his medical malpractice claims against all Defendants, as well as all claims arising under Louisiana state law against LDH.[192]

Guillory asserts state law negligence claims against all defendants except for LDH.[193] The Defendants assert that these are claims against agents of the state who were performing acts within the course and scope of their employment.[194] Accordingly, the Defendants maintain that the Court lacks subject matter jurisdiction over these claims as they are barred by the Eleventh Amendment of the United States Constitution.[195] Guillory asserts that jurisdiction is proper as the state law claims against individual defendants in their individual capacity do not trigger Eleventh Amendment immunity.[196]

---

[191] Doc 5 at ¶60.
[192] Doc. 24 at 1, 16.
[193] *Id.*
[194] Doc. 201-1 at 9.
[195] *Id.*
[196] Doc. 24 at 19.

### a. Sovereign Immunity under the Eleventh Amendment

It is well settled that the Eleventh Amendment prohibits a citizen of a state from suing his own state or a state agency or department.[197] The Supreme Court has extended the amendment's protections to state officials when the state is the "real, substantial party in interest."[198] In determining whether the state is the real or substantial party in interest, courts have analyzed whether the decision rendered would (1) operate against the sovereign, (2) expend itself on the public treasury, (3) interfere with public administration, or (4) compel the state to act or refrain from acting.[199]

### b. Fifth Circuit Jurisprudence Regarding Eleventh Amendment Immunity

The Fifth Circuit has extended sovereign immunity protection to claims against state officials that are rooted in state law. In *Hughes v. Savell*, an inmate in a Louisiana jail, sued a state corrections officer in federal court, alleging negligence arising under state law.[200] In *Hughes*, the plaintiff claimed that the defendant corrections officer negligently failed to protect him from an attack by another inmate while the officer was working as the only dormitory guard on duty at the time of the incident.[201] The plaintiff, alleging that the corrections officer should have reasonably anticipated the attack and failed to take measures to protect him from harm, filed suit against the officer in his personal capacity.[202] The *Hughes* court determined that because, under state law,

---

[197] *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984); *Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 555 (5th Cir. 1988); *Voisin's Oyster House v. Guidry*, 799 F.2d 183, 185 (5th Cir. 1986).
[198] *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Hughes v. Savell*,, 902 F.2d 376, 377 (5th Cir. 1990).
[199] *Pennhurst*, 465 U.S. at 101; *Dugan v. Rank*, 372 U.S. 609, 620 (1963); *Voisin's Oyster House*, 799 F.2d at 188.
[200] *Hughes*, 902 F.2d 376 (5th Cir. 1990).
[201] *Id.* at 376.
[202] *Id.* at 378.

Louisiana is liable for the negligence of its employees, any suit against the correctional officer is a suit against the state and therefore barred by the Eleventh Amendment.[203]

In *Reyes v. Sazan*,[204] the Fifth Circuit clarified its holding in *Hughes* by specifying that the Eleventh Amendment does not provide an automatic bar to state claims asserted against state officials in their personal capacity. Instead, the court focused its inquiry on whether a state employee is indemnified by the state for claims arising under state law. In *Reyes*, the defendant, a Louisiana state trooper, claimed that the Eleventh Amendment provided a bar to the plaintiff's state law claims. The court rejected the defendant's assertion after reviewing the relevant Louisiana indemnification statute and concluding that it extended indemnification only to state employees who were "within the scope of their office, employment, contract, or assignment."[205] The court found that state employees were not indemnified if damages resulted from "the intentional wrongful act or gross negligence of the official, officer, or employee."[206] The court reasoned, "because there is at least a fact issue concerning whether the officers here acted intentionally or with gross negligence, the officials might not receive indemnification," and therefore the Eleventh Amendment provided no bar to the state law claims.[207]

In countering the argument that the Eleventh Amendment bars his negligence claims against the Defendants, Guillory references *New Orleans Towing Ass'n v. Foster*,[208] an unpublished opinion in which the Fifth Circuit reiterates that state law claims against individual defendants are not automatically converted into claims against the

---

[203] *Id.*
[204] *Reyes*, 168 F.3d 158 (5th Cir. 1999).
[205] La. Rev. Stat § 13:5108.2(B).
[206] *Id.*
[207] *Reyes*, 168 F.3d 158 at 163.
[208] *New Orleans Towing Ass'n*, 248 F.3d 1143 (5th Cir. 2001) (unpublished).

state.  In *New Orleans Towing Ass'n*, the court echoed its position that the relevant question in assessing an Eleventh Amendment immunity defense is whether the relief sought operates against the state.[209]  The court concluded that the relief did not operate against the state because the suit was against the defendants in their individual capacities, and the relief sought was monetary relief to be paid from the defendants' own pockets.[210]

Despite its conclusion, the *New Orleans Towing Ass'n* court noted that the key question was "whether under Louisiana law, the liability of the Defendants will be imputed to the state of Louisiana."[211]  The court concluded that *Hughes* did not control the court's analysis since the defendants conceded that there was no Louisiana statute that imputed liability on the state, and the court's own research failed to uncover such statute.[212]

### c.  Defendants are Covered Under Louisiana's Indemnification Statute

The Defendants in this case have identified a relevant Louisiana statute that indemnifies them.  Specifically, La. Rev. Stat § 13:5108.1 provides:

> The state shall defend and indemnify a covered individual[213] against any claim, demand, suit, complaint, or petition seeking damages filed in any court over alleged negligence or other act by the individual, including any demand under any federal statute when the act that forms the basis of the cause of action took place while the individual was engaged in the performance of duties of the individual's office, employment with the state, or engaged in the provision of services on behalf of the state or any of its departments pursuant to Paragraph (E)(2) of this Section.

---

[209] *Id.* at 5.
[210] *Id.*
[211] *Id.*
[212] *Id.* at fn. 2.
[213] La. Rev. Stat § 13:5108.1(E)(1)(a)-(b) provides that the term "covered individuals" includes "an official, officer, or employee holding office or employment in the executive branch of state government or in any department, office, division, or agency thereof."  La. Rev. Stat. § 13:5108(E)(2) provides that the term "covered individuals" includes "a physician…who either contracts with or provides services on behalf of the state or any of its departments, whether compensated or not…"

The statute only precludes indemnification if the actor is engaged in criminal conduct.  As the Defendants correctly assert in their *Reply*,[214] and unlike the plaintiff in *New Orleans Towing Ass'n*,[215] Guillory has not alleged any facts that would indicate that the Defendants were acting outside the course and scope of their employment, or that they were engaged in criminal conduct.[216]  In fact, although Guillory asserts his claims against the Defendants in their individual capacities, he specifically references his claims in relation to their titles and actions as employees of LDH, in his *First Amended Complaint*.[217]

For these reasons, the Court finds that the relief that Guillory seeks *vis-á-vis* his negligence claims against the Defendants, operates against the state and is therefore barred under the Eleventh Amendment.  Accordingly, the Court grants the Defendant's *Motion* and dismisses Guillory's state law negligence claims against the Defendants as barred under the Eleventh Amendment.

### d. Notes in Closing about Individual Defendants' Eleventh Amendment Immunity

Notwithstanding the preceding analysis, the Court finds it important to emphasize two issues with respect to the individual Defendants' Eleventh Amendment immunity. First, with respect to Plaintiff's 1983 claims, it is clear that Louisiana's agreement to indemnify state officers sued in their individual capacity does not convert the claim into an "official capacity" claim and does not immunize the individual officers from liability.[218]

---

[214] Doc. 25.

[215] *New Orleans Towing Ass'n*, 248 F.3d 1143 (5th Cir. 2001) (unpublished).

[216] Doc. 25 at 10.

[217] Doc. 5, at 2-9.

[218] *Downing v. Williams*, 624 F.2d 612, 625-26 (5th Cir. 1980), *vacated on other grounds*, 645 F.2d 1226 (5th Cir. 1981) (per curiam) ("Such an indemnity statute is only an agreement between the state and these individuals and cannot be converted into an extension of Eleventh Amendment immunity by the state. (Citation omitted). If we were to hold otherwise, by passing comprehensive indemnity statutes,

Other circuits have held the same.[219]  The issue here, however, is Plaintiff's state law

claims.

Second, while not argued by Plaintiff, the Court notes that other circuits have

refused to give individual state officers Eleventh Amendment immunity even when the

state has agreed to indemnify them.  For instance, in *Jackson v. Georgia Department of

Transportation*,[220] individual George employees of the Georgia Department of

Transportation argued entitlement to Eleventh Amendment immunity from a state law

tort claim based on Georgia's creation of a trust fund from which such claims would be

paid. The Eleventh Circuit held that "the existence of a voluntarily established liability

trust fund does not make the state the real party in interest in this action and that the

trust fund does not extend the state's Eleventh Amendment immunity to its employees

sued in their individual capacity."[221]

Similarly, in *Wilson v. Beebe*,[222] the court considered a pendent state law

negligence claim against a Michigan police office whose firearm discharged as he was

attempting to handcuff the plaintiff. The Sixth Circuit concluded: "[The officer] is not

entitled to the protection of the Eleventh Amendment which embodies a grant of

---

states could set up sovereign immunity as a defense for almost all individuals sued for damages in their individual capacities under section 1983."). *See also, Hudson v. City of New Orleans*, 174 F.3d 677, 687 (5th Cir. 1999); *Flowers v. Phelps*, 956 F.2d 488, n. 2 (5th Cir. 1992); *Landesburg-Boyle v. State of La.*, No. 03-3582, 2004 WL 1516823, *5 n.14 (E.D. La. July 2, 2004); *Pegues v. Miss. State Veterans Home*, No. 15-121, 2017 WL 3298684, *3 n. 2 (N.D. Miss. Aug. 2, 2017).

[219] *See, e.g. Spruytte v. Walters*, 753 F.2d 498, 511-14 (6th Cir. 1985); *Duckworth v. Franzen*, 780 F.2d, 645, 650 (7th Cir. 1985) (Posner, J.) ("[T]he purpose of the Eleventh Amendment is only to protect the state against involuntary liability. If the state chooses to pick up the tab for its errant officers, its liability for their torts is voluntary.") *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988) ("A state indemnification statute does not automatically extend immunity to state officials."); *Geiss v. State of Colorado*, 841 F.2d 1042, 1045-46 (10th Cir. 1988) (per curiam) (Rejecting the state's "attempt unilaterally to extend its sovereign immunity to all of its employees…").

[220] *Jackson*, 16 F.3d 1573, (11th Cir. 1994).

[221] *Id.* at 1578.

[222] *Wilson*, 770 F.2d 578 (6th Cir. 1985).

immunity to the states in recognition of the requirements of federalism, and the State cannot clothe him this immunity by voluntarily agreeing to pay any judgment rendered against him."[223]

Nevertheless, this Court is required to apply Fifth Circuit law, as outlined above. Under that case law, Plaintiff's state law claims against the individual Defendants must be dismissed as barred by the Eleventh Amendment.

## IV.    LEAVE TO AMEND

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted."[224] The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.[225]

Relying on this case and other cases from this circuit, one district court in Texas articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487

---

[223] *Id.* at 588.
[224] *Byrd v. Bates,* 220 F.2d 480, 482 (5th Cir. 1955).
[225] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002).

(2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.,* 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).[226]

Finally, one leading treatise explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.[227]

Here, Plaintiff has asked in the alternative for leave to amend to cure any deficiencies.[228] As mentioned throughout the opinion, the Court will act in accordance with the "wise judicial practice" and general rule and grant the Plaintiff's request.

The Court does so despite the fact that Plaintiff has previously amended his Complaint twice because none of the Plaintiff's prior amendments came in response to this Court ruling that Plaintiff failed to state a claim. Specifically, the first amendment was done early before the answer was filed, and the second merely corrected the identity of one defendant.[229]

---

[226] *Tow v. Amegy Bank N.A.,* 498 B.R. 757, 765 (S.D. Tex. 2013).
[227] 5B Charles A. Wright, Arthur R. Miller, *et al.,* *Federal Practice and Procedure* § 1357 (3d ed. 2016).
[228] Doc. 24 at 20.
[229] *See* footnote 1.

Nevertheless, the Court must warn the Plaintiff of his obligations under Rule 11 of the Federal Rules of Civil Procedure. By submitting an amended complaint to the Court, counsel for the Plaintiff is certifying that, to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[] . . . the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[230] While Plaintiff has done nothing to date to give the Court any indication that he will violate this rule, the Court is merely providing him with a reminder of his obligations.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' *Motion to Dismiss*[231] is hereby **GRANTED**. Guillory will be given 30 days within which to amend and supplement his complaint.

IT IS SO ORDERED.

Signed in Baton Rouge, Louisiana, on <u>March 20, 2018</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[230] Fed. R. Civ. P. 11(b)(2).
[231] Doc. 20.